O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN YOO, | Case No. SACV 16-1847-KK |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| NANCY A. BERRYHILL[1], Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Kathryn Yoo ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title II Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///
///
///

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill as Defendant in the instant case.

# I.
# **PROCEDURAL HISTORY**

On April 8, 2013, Plaintiff filed an application for DIB, alleging a disability onset date of August 10, 2012. Administrative Record ("AR") at 166-67. Plaintiff's application was denied initially on August 28, 2013, and upon reconsideration on January 8, 2014. Id. at 105-17.

On February 21, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 120-21. On April 15, 2015, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 36-76. A vocational expert ("VE") also testified at the hearing. Id. at 63-71. On May 7, 2015, the ALJ issued a decision denying Plaintiff's application for DIB. Id. at 15-34.

On May 22, 2015, Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 7-9. On August 31, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-6.

On October 6, 2016, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed July 12, 2017. Dkt. 19, JS.

# II.
# **PLAINTIFF'S BACKGROUND**

Plaintiff was born on October 30, 1970, and her alleged disability onset date is August 10, 2012. AR at 166. She was forty-one years old on the alleged disability onset date and forty-four years old at the time of the hearing before the ALJ. Id. at 39, 166. Plaintiff has a masters degree and she has work experience as a resource analyst, financial analyst, administrative analyst, and administrative assistant. Id. at 180. Plaintiff alleges disability based on forearm pain (both arms); wrist joint pain (both arms); bilateral carpal tunnel syndrome; bilateral cubital tunnel syndrome; thoracic outlet syndrome; cervical myofascial pain syndrome; tendinitis of the wrist

(both arms); neuropathy, ulnar nerve (both arms); Reynauds syndrome; and cervical (neck) radiculopathy. Id. at 178.

## III.
## STANDARD FOR EVALUATING DISABILITY

To qualify for DIB, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[2]
4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## **THE ALJ'S DECISION**

**A.   STEP ONE**

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since August 10, 2012, the alleged onset date." AR at 20.

**B.   STEP TWO**

At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: myofascial pain syndrome; carpal tunnel syndrome, mild; cubital tunnel syndrome, mild; cervical spine disc disease; chondromalacia of the patella; generalized anxiety disorder; major depressive disorder, in partial remission; and somatic symptom disorder (20 CFR 404.1520(c))." Id.

**C.   STEP THREE**

At step three, the ALJ found Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Id.

### D. RFC DETERMINATION

The ALJ found Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except: lift and/or carry 10 pounds frequently, 20 pounds occasionally; stand, walk, or sit 6 hours out of an 8-hour day; frequent fine and gross manipulation bilaterally; frequently climb stairs, no ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch and crawl; occasional overhead reaching with bilateral upper extremities; avoid concentrated exposure to extreme cold, vibration; avoid even moderate exposure to unprotected heights, and moving and dangerous machinery; no forceful gripping, forceful grasping, or forceful twisting, bilaterally; and simple, routine tasks.

Id. at 23.

### E. STEP FOUR

At step four, the ALJ found Plaintiff is "unable to perform any past relevant work." Id. at 28.

### F. STEP FIVE

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id. at 29.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents six disputed issues: (1) whether the ALJ properly considered the opinion of the treating doctor, Dr. John Kyawmayo Tin; (2) whether the ALJ failed to properly consider the opinion of Dr. George McCan; (3) whether the ALJ failed to properly consider the opinion of Dr. Godes, a

5

consultative examiner, concerning hand activity; (4) whether [Plaintiff] should have been found limited to only occasional use of her upper extremities; (5) whether the ALJ failed to properly consider a limitation concerning concentration, persistence, and pace, and the ALJ failed to pose this limitations to the VE; (6) whether the ALJ committed legal error in not adequately addressing [Plaintiff's] testimony regarding her pain and limitations.  JS at 2.

The Court finds the first issue dispositive of this matter and thus declines to address the remaining issues.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

## VI.
## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Id.  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Reddick, 157

F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.
## DISCUSSION
## THE ALJ FAILED TO PROPERLY DEVELOP THE RECORD AND REJECT DR. TIN'S TREATING OPINION

### A. RELEVANT FACTS

#### 1. Dr. John Kyawamyo Tin's Opinion

Dr. John Kyawamyo Tin, a Physical medicine/Rehabilitation physician, has been regularly treating Plaintiff since as early as 2012 for bilateral arm pain, including numbness and tingling. AR at 534. On April 6, 2015, approximately one week prior to the hearing before the ALJ, Dr. Tin issued a Work Status Report addressing Plaintiff's "chronic neck pain, bilat forearm pain, [and] myofascial pain syndrome." Id. at 6804. In the report, Dr. Tin noted Plaintiff's conditions required modified activity and "[i]f modified activity is not accommodated by the employer then [Plaintiff] is considered temporarily and totally disabled from [her] regular work for the designated time . . . ." Id. Specifically, Dr. Tin noted Plaintiff had the ability to "Lift/carry/push/pull no more than 10 pounds," but Plaintiff should "avoid repetitive motion activities of the bilateral upper extremity." Id.
///

7

**2. VE Testimony**

On April 15, 2015, the ALJ presented five hypotheticals to the VE during Plaintiff's hearing. Id. at 66-71. In the first hypothetical, the ALJ used the following RFC in relevant part: "she can lift and/or carry 10 pounds frequently, 20 pounds occasionally; she can stand, walk, or s[i]t six hours out of an eight-hour day; *frequent* fine and gross manipulation bilaterally . . . ." Id. at 66-67 (emphasis added). With this hypothetical, the VE found jobs would be available at the light, unskilled work level. Id. at 67.

In the second hypothetical, the ALJ stated, "I am going to just change the frequent fine and gross manipulation to *occasional* fine and gross manipulation bilaterally." Id. at 68 (emphasis added). With this hypothetical, the VE found there would be "no work" available to Plaintiff. Id.

In the third hypothetical, the ALJ provided the following: "Lift and/or carry 10 pounds frequently, 10 pounds occasionally; she can stand, walk, or s[i]t six hours out of an eight-hour day; *frequent* fine and gross manipulation bilaterally . . . ." Id. at 68-69 (emphasis added). With this hypothetical, the VE found jobs would be available at the light, unskilled work level. Id. at 69.

In the fourth hypothetical, the ALJ asked, "And if I changed [the third hypothetical] to *occasional* fine and gross manipulation, would there be other work?" Id. at 70 (emphasis added). With this hypothetical, the VE found there would be "no work" available to Plaintiff. Id.

In the fifth hypothetical, the following exchange occurred between the ALJ and the VE over the April 6, 2015 Work Status Report issued by Plaintiff's treating physician, Dr. Tin:

> [ALJ]: . . . Fifth hypothetical, lift, carry, push, pull, no more than 10 pounds; and avoid repetitive motion activities of the bilateral upper extremities, and no, you can't ask for anything else because I got that directly from the doctor's note, so I cannot give any explanation.

|   |   |
|---|---|
| 1 | [VE]: Depends on what he means. |
| 2 | . . . |
| 3 | ALJ: It says, "please avoid repetitive motion activities of the bilateral upper |
| 4 | extremities." |
| 5 | . . . |
| 6 | VE: If it is – if that means constant – |
| 7 | [ALJ]: Okay? |
| 8 | [VE]: Then [Plaintiff] could still do the jobs that I outlined because they're |
| 9 | at frequent. |
| 10 | [ALJ]: Okay. |
| 11 | [VE]: But if it is – if he defines that as frequent being too much, [Plaintiff] |
| 12 | could not perform those jobs. |

Id. at 70-71; see also id. at 6804.

### 3. The ALJ's Opinion

In coming to her RFC determination, the ALJ relied on the medical opinions of eight physicians -- two state agency medical consultants; two state agency mental health consultants; Dr. John Kyawmyo Tin, a treating physician; Dr. H. Harlan, Bleecker, a consultative orthopedist; Dr. John Godes, a consultative internist; and Dr. George McCan, a workers compensation orthopedic qualified medical examiner. The ALJ ultimately concluded that Plaintiff was capable of "*frequent* fine and gross manipulation bilaterally." Id. at 23 (emphasis added). As to Dr. Tin's medical opinions, the ALJ stated she was giving "some but not full weight to the opinions of Dr. Tin." Id. at 26. The ALJ noted Dr. Tin restricted Plaintiff to "no repetitive motion activities of the bilateral extremity," but she concluded that "[Dr. Tin's] work restrictions given regarding the use of the upper extremities is generally included in the residual functional capacity by limiting [Plaintiff] to frequent fine and gross manipulations bilaterally, occasional overhead reaching, and no forceful gripping, grasping and twisting." Id.

9

## B. APPLICABLE LAW

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996)); Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth [her] own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

While an ALJ is not required to discuss all the evidence presented, she must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in

the record and may not point to only those portions of the records that bolster [her] findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Lastly, while an ALJ is "not bound by an expert medical opinion on the ultimate question of disability," if the ALJ rejects an expert medical opinion's ultimate finding on disability, [s]he "must provide 'specific and legitimate' reasons for rejecting the opinion." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31). An ALJ is not precluded from relying upon a physician's medical findings, even if [s]he refuses to accept the physician's ultimate finding on disability. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989).

When making a disability determination, the ALJ has a "special duty to fully and fairly develop the record and to assure that the [plaintiff's] interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quotation marks omitted)). Moreover, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010). "When the ALJ's duty is triggered by inadequate or ambiguous medical evidence, the ALJ has an obligation to obtain additional medical reports or records from the claimant's treating physicians." Held v. Colvin, 82 F. Supp. 3d 1033, 1040 (N.D. Cal. 2015).

**C. ANALYSIS**

As set forth above, the ALJ relied upon the medical opinions of eight physicians in assessing Plaintiff's RFC. Notably, Dr. Tin was the only treating physician with a well-established treatment history with Plaintiff. As such, the ALJ

11

was required to provide "clear and convincing reasons" in order to properly reject Dr. Tin's opinion. Carmickle, 533 F.3d at 1164. The ALJ, however, failed to do so when she did not (1) resolve a clear ambiguity created by Dr. Tin's "repetitive motion" limitation, and (2) provide reasons for rejecting Dr. Tin's "repetitive motion" limitation.

Dr. Tin specifically restricted Plaintiff to work that "avoid[ed] repetitive motion activities of the bilateral upper extremity." AR at 26. During the hearing, the ALJ posed five hypotheticals to the VE, one of which included reliance on Dr. Tin's "repetitive motion" restriction. See id. 66-71. In the first four hypotheticals, the determining factor for whether any jobs were available to someone with Plaintiff's limitations came down to whether Plaintiff was limited to "*frequent* fine and gross manipulation" or "*occasional* fine and gross manipulation." See id. at 66-70 (emphasis added). If Plaintiff was able to perform "*frequent* fine and gross manipulation," then jobs were available to Plaintiff at the light work level. See id. If Plaintiff was limited to "*occasional* fine and gross manipulation," then there were no jobs available that Plaintiff could perform, and thus, Plaintiff would be found disabled.

Dr. Tin's "repetitive motion" limitation, however, created an ambiguity in the fifth hypothetical because his restriction on "repetitive motion" did not answer the question as to how often Plaintiff can perform upper extremity motion activities—i.e. "frequently" or "occasionally". See id. at 70-71. As Defendant points out, the Ninth Circuit has noted that the word "repetitively" "appears to refer to a *qualitative* characteristic—i.e. *how* one uses his hands, or *what type* of motion is required—whereas 'constantly' and 'frequently' seem to describe a *quantitative* characteristic—i.e. *how often* one uses his hands in a certain manner." JS at 10; Gardner v. Astrue, 257 F. App'x 28, 30, n.5 (9th Cir. 2007)[3] (emphasis in

---

[3] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

12

original). Looking at the VE's testimony, it is clear that Dr. Tin's use of the word "repetitive", without further explanation, created an ambiguity. As the VE testified, "[i]f [repetitive] means constant . . . [t]hen [Plaintiff] could still do the jobs that I outlined . . . [b]ut if [Dr. Tin] defines [repetitive] as frequent being too much, [Plaintiff] could not perform those jobs." AR at 71. Thus, in light of this ambiguity, the ALJ had a duty "to conduct an appropriate inquiry," and further develop the record. Tonapetyan, 242 F.3d 1150.

In addition to failing to resolve the ambiguity, the ALJ inexplicably rejected Dr. Tin's "repetitive motions" limitation. While the ALJ specifically notes Dr. Tin's restrictions were "generally included" in the RFC because the RFC limited Plaintiff to "frequent fine and gross manipulation bilaterally, occasional overhead reaching, and no forceful gripping, grasping and twisting," it does not appear Dr. Tin's "repetitive motion" restriction was similarly included. The RFC determination clearly contains a *quantitative* limitation in Plaintiff's upper extremity use (frequent); however, the RFC does not contain any reference to Dr. Tin's *qualitative* limitation (repetitive).[4] See AR at 23; Gardner, 257 F. App'x at 3o, n.5. Thus, the ALJ's failure to fully and fairly develop the record and to provide reasons for rejecting Dr. Tin's "repetitive motions" limitation, constitutes error.

## VIII.
## **RELIEF**

**A.  APPLICABLE LAW**

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for

---

[4] While the ALJ explains in her Opinion, "[t]he [record] shows no additional impairment or significant worsening of the previously diagnosed impairments" and thus, "there is no objective support for the additional limitation[s]," the additional limitations she refers to are solely in the context of Plaintiff's ability to lift/carry/push/pull. See AR at 26. Thus, she fails to provide any explanation as to why she is rejecting Dr. Tin's "repetitive motion" limitation.

13

additional investigation or explanation." Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B.     ANALYSIS**

In this case, the record has not been fully developed. The ALJ came to her conclusion without resolving the clear ambiguity raised by Dr. Tin's "repetitive motions" limitation and, further, failed to explain why she was rejecting the limitation. Accordingly, remand for further proceedings is appropriate.

## IX.
## CONCLUSION

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: August 03, 2017

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge